**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **EQUITY ONE, INC.,** )<br>    Plaintiff, )<br> )<br>vs. )<br> )<br>**CITY OF PITTSBURGH,** )<br>    Defendant. ) | <br><br><br>2:03cv1816<br>**Electronic Filing**<br><br> |

## MEMORANDUM OPINION

May 30, 2006

### I.    INTRODUCTION

Plaintiff, Equity One, Inc. ("Equity One"), and Defendant, City of Pittsburgh ("the City"), have filed cross-motions for summary judgment. After careful consideration of the motions, the memoranda of law in support and in opposition and the supporting materials supplied by the parties, this Court will grant the motion for summary judgment submitted by Plaintiff and deny the motion for summary judgment submitted by Defendant.

### II.    STATEMENT OF THE CASE

Equity One brings this action, alleging that the City violated its procedural due process rights under the federal and state constitutions when it condemned and demolished property in which Equity One held a mortgage without providing it with notice and an opportunity to be heard. The City does not deny that Equity One did not receive notice of the condemnation and demolition, but contends that Equity One has not alleged or provided evidence that its loss resulted from a policy or custom of the City.

Facts

The parties agree that, on October 12, 2000, property located at 3112 Sacramento Avenue, Pittsburgh, Pennsylvania 15204 (the "Property") was transferred from Josephine E. Dettling to Richard Lonick; that on that same day, a mortgage secured by the Property was executed and delivered to Equity One by Lonick; that on May 31, 2002, after the City had initiated a Treasurer's Sale on the Property, the deed and mortgage for the Property were for the first time recorded by Equity One with the Allegheny County Recorder of Deeds; that the City acquired an interest in the Property via Treasurer's Sale on or about July 11, 2002; that on

October 4, 2002, Equity One instituted a mortgage foreclosure action against Lonick in the Court of Common Pleas of Allegheny County through the filing of a complaint at G.D. No. 02-018644; that the docket entries for this matter also reflect that a default judgment in the amount of $50,808.16 was entered against Lonick, the owner of the Property, by Equity One on June 30, 2003; and that on March 11, 2003, the Property was inspected by the City of Pittsburgh Bureau of Building Inspection.

The City asserts that, on March 12, 2003, in response to the dangerous and rundown condition of the Property, a Dangerous Condition Notice was mailed to and physically posted on the Property. Equity One contends that the City initiated demolition proceedings because it determined that the Property was not marketable. It cites a letter, dated September 15, 2003, in which Mary Lou Tenenbaum, the City Manager of Real Estate, explained to Equity One's counsel that:

> The City of Pittsburgh acquired the above property via Treasurer's Sale on July 11, 2002 for non payment of City and School District Real Estate Taxes.
>
> Upon inspection of the property the Sales Coordinator determined that it was not marketable, and recommended demolition. The structure was inspected by the Bureau of Building Inspection and condemned in March 2003. It was demolished in May 2003.

(Docket No. 36 Ex. A.)

The Property was condemned on March 13, 2003. On May 12, 2003, bids for the demolition of the Property were opened. The contract was awarded to Tom Sipes Demolition. Demolition of the Property was completed on June 9, 2003. No notice of the condemnation or demolition, other than the posting on the Property, was provided to Equity One. (Def.'s Answers Pl.'s Interrog. Nos. 7-8.)[1]

Procedural History

Plaintiff filed this action in the Court of Common Pleas of Allegheny County on October 29, 2003. Count I alleges a claim for denial of Equity One's procedural due process rights under the Pennsylvania Constitution. Count II alleges a claim for denial of Equity One's procedural

---

[1] Docket No. 36 Ex. E.

due process rights under the Fourteenth Amendment to the Constitution and it is brought pursuant to 42 U.S.C. § 1983.

On November 26, 2003, Defendant removed the action to this Court on the basis of federal question jurisdiction.  On December 20, 2005, a motion for summary judgment was filed by Defendant.  On January 20, 2006, a cross-motion for summary judgment was filed by Plaintiff.

### III.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Woodside v. School Dist. of Philadelphia Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001) (quoting Foehl v. United States, 238 F.3d 474, 477 (3d Cir. 2001) (citations omitted)).  In following this directive, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's favor.  Doe v. County of Centre, PA, 242 F.3d 437, 446 (3d Cir. 2001); Woodside, 248 F.3d at 130; Heller v. Shaw Indus., Inc., 167 F.3d 146, 151 (3d Cir. 1999).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'–that is, pointing out to the District Court–that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

### IV.  DISCUSSION

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.  Thus, to establish a claim under this statute, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted).

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law..."  U.S. Const. Art. XIV, § 1.  The Supreme Court has held that, prior to taking an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a state must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

In Mennonite Board of Missions v. Adams, 462 U.S. 791 (1983), the Court addressed the issue of whether notice by publication and posting provided a mortgagee of real property with adequate notice of a proceeding to sell the mortgaged property for nonpayment of taxes.  The Court held that:

> Since a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale.  When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service.  But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of Mullane.
>
> Neither notice by publication and posting, nor mailed notice to the property owner, are means "such as one desirous of actually informing the [mortgagee] might reasonably adopt to accomplish it.". . .  Notice to the property owner, who is not in privity with his creditor and who has failed to take steps necessary to preserve his own property interest, also cannot be expected to lead to actual notice to the mortgagee. . . .
>
> Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable.

Id. at 798-800 (citing Mullane, 339 U.S. at 315) (footnotes and other citations omitted).  The Pennsylvania Supreme Court has also held that mortgagees are entitled to receive prior notice of

actions affecting property in which they hold a mortgage. RTC Mortgage Trust 1994-N-2, 730 A.2d 476 (Pa. 1999).

The notice is "constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent." Jones v. Flowers, 126 S.Ct. 1708, 1714 (2006). In Jones, the Supreme Court recently held that when the state sent notice of a tax sale but it was returned unclaimed, it had to take additional reasonable steps to attempt to provide notice to the property owner before selling the property, if it was practicable to do so. The Court held that the steps that the state took were insufficient.

As noted above, Equity One's mortgage for the Property was recorded with the Allegheny County Recorder of Deeds on May 31, 2002. See Title Report, Docket No. 36 Ex. B. Thus, Equity One's interest was on record prior to the time the City inspected the Property on March 11, 2003, prior to the time it condemned the Property on March 12, 2003, prior to the time it began proceedings for demolishing the Property on May 12, 2003 and prior to the time demolition was completed on June 9, 2003. Nevertheless, no notice of the condemnation or demolition proceedings was provided to Equity One.

As noted by a district court in a case with facts nearly identical to this one:

> the reasoning of Adams applies with even more force to the demolition of a mortgagee's property in which a mortgagee has an interest. Certainly, once the property has been demolished, the mortgagee's interest becomes completely nullified. . . . Since the mortgagees clearly had a "substantial property interest" in this building which would have been significantly affected by a demolition, they were entitled to not only notice by publication but by notice mailed to their last known address or by personal service.

Miller v. City of Phila., 2001 WL 1168105, at *2 (E.D. Pa. Aug. 23, 2001). In Miller, the court held that, when the City of Philadelphia demolished property in which the plaintiffs held a mortgage without providing them notice and an opportunity to be heard, it violated their procedural due process rights and summary judgment was entered in their favor.[2]

---

[2]Defendant argues that this opinion has been withdrawn. The Court of Appeals remanded the case so that the parties could reach a settlement and they agreed to have the court withdraw and vacate its prior opinion. See Miller v. City of Phila., 2002 WL 31730911 (E.D. Pa. Oct. 18,
(continued...)

Defendant's Motion

Defendant argues that Plaintiff has failed to demonstrate the existence of a policy, practice or custom that deprived it of some federally secured right.  Specifically, the City contends that Equity One has not alleged, and the record does not demonstrate, that it had a policy of not providing notice to mortgagees prior to demolishing property in which they held a mortgage.  Rather, it contends that the evidence suggests only that Equity One did not receive notice in this particular case.

The Supreme Court has long held that:

> A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 694 (1978).

> Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decision of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.  Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403-04 (1997) (citations omitted).  In addition, the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Id. at 404.

As an initial matter, Defendant's argument that there is a heightened pleading requirement for cases brought under § 1983 has been rejected by the Supreme Court.  See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993).  Plaintiff's complaint, which alleged that Defendant deprived it of a federally protected right by actions taken under color of state law, contained all of the allegations required under Rule 8 of

---

[2](...continued)
2002).  However, the reasoning of the decision, as well as that of all the cases cited therein, remains good law.

the Federal Rules of Civil Procedure.³

Defendant also contends that Plaintiff has failed to produce any evidence that the lack of notice in this case was the result of a policy or custom of the City. The City notes that the only portion of discovery that addresses this issue is an interrogatory inquiring whether the City has ever been named in a lawsuit in federal or state court for failure to give a property owner, mortgagee or lienholder notice of a demolition, to which it responded that there was one lawsuit that involved settlement negotiations and did not involve a "notice" issue as claimed herein. (Pl.'s Interrog. No. 10.)

The City has also proffered the affidavit of Paul Loy, currently the Demolition Manager for the City Bureau of Building Inspections. Mr. Loy states that:

> It is the policy, and upon information and belief, was the policy of the City of Pittsburgh at the time of the razing of the property located at 3112 Sacramento Avenue, Pittsburgh, Pa. to notify the owner or owners of the property prior to demolition. Ownership is determined by a search of the Allegheny County assessment records. It is also, and upon information and belief, was at the time of the razing of the property located at 3112 Sacramento Avenue, Pittsburgh, Pa. the policy of the City of Pittsburgh to notify all mortgagees of any property prior to demolition. All mortgagees are ascertained by searching the Allegheny County assessment records.

(Docket No. 41 Ex. A.)

However, Equity One notes that, in response to the allegation in its complaint that the City demolished the Property without providing notice, the City stated in its answer that "[t]he property had already been obtained by the City through a treasurer's sale. As such, the City was not required to provide notice." (Answer ¶ 15.)⁴ In addition, in response to Plaintiff's interrogatory inquiring whether it had been given prior notice of the demolition and if not, why not, Defendant wrote:

---

³In Miller, the plaintiffs did not allege a policy or custom. (Docket No. 36 Ex. G.) The defendant argued that it acted pursuant to the Philadelphia City Code, which states that notice to the property owner is all that is required. The court held that "Adams clearly requires that before the structure is demolished, written notice must be sent by mail to an entity which has a substantial property interest in the structure such as the mortgagee in this case." 2001 WL 1168105, at *3.

⁴Docket No. 4.

> Plaintiff, and the public at large, were given Notice of Condemnation of the demolition by posting Notice of Condemnation on the subject premises on March 12, 2003. Notice is generally given to the identified property owner. In this instance as a result of the Treasurer's Sale of September 8, 2002, notice was provided to the City of Pittsburgh. No other Notice of Condemnation was provided to the Plaintiff.

(Def.'s Answer Pl.'s Interrog. No. 7.)

Thus, although Mr. Loy's affidavit suggests that the City's policy at the time of the events in question was to provide notice to mortgagees, Defendant's answer and its response to Plaintiff's interrogatory indicate otherwise. The City cannot use Mr. Loy's proffered affidavit to demonstrate the lack of a policy or custom in this case for two reasons.

First, Mr. Loy's affidavit is insufficient. The Federal Rules of Civil Procedure provide that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). Affidavits based on "information and belief" are inadequate and must be disregarded. See Automatic Radio Mfg. Co. v. Hazeltine Research, 339 U.S. 827, 831 (1950); Patterson v. County of Oneida, N.Y., 375 F.3d 206, 219 (2d Cir. 2004); Tziatzios v. United States, 164 F.R.D. 410, 412 (E.D. Pa. 1996). Mr. Loy's statement that, on "information and belief," the policy of the City at that time was to provide notice to mortgagees does not present evidence based on his personal knowledge. Thus, his affidavit must be disregarded.

More significantly, the City cannot contradict an admission it made in its pleadings. The Federal Rules of Civil Procedure require a defendant to "state in short and plain terms [its] defenses to each claim asserted and [to] admit or deny the averments upon which [it] relies." Fed.R.Civ.P. 8(b). Furthermore:

> Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided.

Fed.R.Civ.P. 8(d).

Defendant's statement in its answer that it was not required to provide notice to Equity One because the City had already obtained the Property through a Treasurer's Sale constitutes an

8

admission by the City that it had a policy or custom of providing notice of condemnation and demolition proceedings only to property owners, but not to mortgagees. The City could not contradict this admission by means of Mr. Loy's affidavit even if it were based on his personal knowledge.

It is well established that "a party cannot attack issues of fact established in admissions by resisting a motion for summary judgment. Affidavits and depositions entered in opposition to summary judgment that attempt to establish issues of fact cannot refute default admissions." United States v. Kasuboski, 834 F.2d 1345, 1350 (7th Cir. 1987) (footnote and citations omitted). In Kasuboski, the defendants failed to respond to requests for admissions under Rule 36(a), and therefore these admissions were deemed admitted. When the plaintiff moved for summary judgment, the defendants attempted to submit affidavits challenging the factual assertions therein. The court refused to allow the defendants to challenge the assertions in this manner and affirmed the grant of summary judgment for the plaintiff.

The same principle applies to admissions made in an answer and to statements made in a response to an interrogatory. See National Ass'n of Life Underwriters, Inc. v. Commissioner, 30 F.3d 1526, 1530 (D.C. Cir. 1994) (Commissioner of Internal Revenue could not contradict admission made in answer); Donohoe v. Consolidated Operating & Prod. Corp., 982 F.2d 1130, 1136 n.4 (7th Cir. 1992) ("The district court did not consider [the] affidavit, because it contradicted [the party's] earlier response to an interrogatory.... The court's refusal to consider the affidavit was appropriate").

Thus, Defendant's own pleadings and discovery admit the existence of a policy or custom of not providing notice to mortgagees and its attempt to take a contrary position based on Mr. Loy's affidavit is unavailing. Defendant's motion for summary judgment will be denied.

Plaintiff's Motion

Plaintiff moves for summary judgment on the grounds that the record establishes that there are no genuine issues of material fact as to all of the elements of its procedural due process claim: the City demolished the Property without providing notice to Equity One, although it held a mortgage on the Property and was entitled to such notice, and the City had a custom or policy

of engaging in this behavior.  Defendant responds that it did not have a custom or policy, and it relies upon Mr. Loy's affidavit.  For the reasons explained above, this argument is unavailing.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  In this case, the pleadings, admissions on file and answers to interrogatories demonstrate that the City did not provide notice to Equity One prior to condemning and demolishing the Property in which Equity One had a substantial property interest as the mortgagee, that it had a policy of not providing notice to mortgagees at that time and that Equity One was injured when it was not notified by the City that the structure on which it held a mortgage would be demolished.  As a result, Plaintiff has satisfied all of the elements of its procedural due process claim against the City.  See Miller, 2001 WL 1168105, at *4.  Therefore, its motion for summary judgment as to the liability of the City will be granted.

Plaintiff contends that the balance due on its mortgage, exclusive of legal fees and costs, as of April 14, 2004, amounts to $65,236.36; that its fees and costs amount to $9,017.43; and that the sum of these numbers is $74,253.79.  (Docket No. 36 Exs. H, I.)  It also requests per diem interest since April 14, 2004 to be added to the date of payment and monthly interest charges since April 2004.  Defendant has not stipulated to these amounts, and they remain to be determined.

## V.    CONCLUSION

Based on the foregoing, the motion for summary judgment filed by Defendant shall be denied and the motion for summary judgment filed by Plaintiff shall be granted.  An appropriate order will follow.

s/ David Stewart Cercone  
David Stewart Cercone  
United States District Judge

cc: Peter E. Meltzer, Esquire
Law Offices of Meltzer & Associates
1600 Locust Street
Suite 200
Philadelphia, PA 19103

Jacqueline R. Morrow, Esquire
John G. Shorall, II, Esquire
Shannon F. Barkley, Esquire
City of Pittsburgh Law Department
414 Grant Street
313 City-County Building
Pittsburgh, PA 15219